1    **WO**

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7                 FOR THE DISTRICT OF ARIZONA

8

9    United States of America,                | No. CR-19-01166-001-TUC-JCH (LAB)

10                    Plaintiff,               | **ORDER**

11   v.

12   Jocelyn Lopez-Sanchez,

13                    Defendant.

14

15

16        Before the Court is Defendant Jocelyn Lopez-Sanchez's ("Defendant") motion for

compassionate release pursuant to 18 U.S.C § 3582(c)(1)(A) ("Motion"). (Doc. 48.) The

17

Federal Public Defender has filed a Notice Regarding Defendant's *Pro Se* Motion for a

18

Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A). (Doc. 51.) The government failed

19

to respond to the Motion and the time for filing a response has elapsed. (Doc. 50.) For the

20

reasons set forth below, the Motion will be denied.

21

22        **I.      BACKGROUND**

23        On October 31, 2018, Defendant smuggled approximately one-thousand fentanyl

pills from Mexico into the United States through the Nogales Port of Entry in exchange for

24

payment. (Doc. 44 at 2.) On November 1, 2018, one night later, Defendant attended a house

25

party where she gave pills to at least one of the three young victims that overdosed at the

26

party. *Id.* at 1-2. Tucson Police Officers were able to revive two of the three victims with

27

Narcan. *Id.* The third victim, a 19-year-old male, was pronounced dead at the scene. *Id.* at

28

2. The Pima County Medical Examiner's Office determined that the cause of his death was

fentanyl intoxication. *Id.* at 2-3.

On May 1, 2019, a grand jury indicted Defendant on six counts involving the importation and distribution of fentanyl resulting in death, in violation of 21 U.S.C. § § 841(a), (b)(1)(C), 846, 952, and 963. (Doc. 3.) On March 3, 2020, Defendant pleaded guilty to two counts of distribution and possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and one count importation of fentanyl in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and (b)(3). (Doc. 41 at ¶ 3-4.) In exchange for Defendant's guilty plea, the government agreed to dismiss the remaining charges in the indictment at the time of sentencing and to stipulate, pursuant to Fed. R. Crim. P. 11(c)(1)(C), to a sentence of between 12 and 20 years in prison. *Id.* at ¶ 4.

On October 5, 2020, this Court accepted the stipulated-sentence plea agreement and sentenced Defendant to 144 months in prison followed by 3 years of supervised release. (Doc. 46.) As of the date of this Order, Defendant has served approximately 39 months of her 144-month custodial sentence. (Doc. 46; Doc. 41 at 1.) Defendant is currently detained at a Federal Detention Center in Seattle, WA ("FDC SeaTac") under the direction of the Bureau of Prisons ("BOP"). (Doc. 51 at 3; Doc. 48 at 10.)

Defendant is twenty-five years old and suffers from anemia, anxiety, depression, psychosis, and manic episodes. (Doc. 41 at 1; Doc. 48 at 2.) She also has a history of substance abuse, smoking, and alcoholism. (Doc. 48 at 2.) Defendant argues that her sentence should be reduced because she is medically unfit and at a high risk of serious complications should she become infected with COVID-19. *Id.* She also argues the Court should grant her request for release due to the inadequacy of medical services provided at FDC SeaTac, specifically due to inadequate COVID testing and threat of the Omicron COVID variant. *Id.* At 3-4.

On June 13, 2022, the Federal Public Defender filed its notice stating that upon review, it sees no basis for appointment of counsel. (Doc. 51.) On June 2, 2022, this Court ordered the government to respond to the Motion, but the government failed to do so. (Doc. 50.)

## II.    LEGAL STANDARDS

A district court is generally prohibited from modifying a sentence once it has been imposed, unless expressly permitted by law. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003); *United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997), as amended on reh'g (Aug. 4, 1997), cert. denied, 522 U.S. 1083, 118 S. Ct. 869, 139 L. Ed. 2d 766 (1998) (holding that "[a] district court does not have inherent power to resentence defendants at any time. Its authority to do so must flow either from the court of appeals mandate under 28 U.S.C. § 2106 (1982) or from Federal Rule of Criminal Procedure 35.") (citations omitted); *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999) (recognizing that "district courts do not have 'inherent authority' to reconsider sentencing orders.") (citations omitted).

However, a detainee in the BOP may seek a sentence reduction from a federal district court pursuant to 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018. Pub. L. No. 115-391, 132 Stat. 5194, at 5239-40 (2018); *see United States v. Tsosie*, No. CR-94-00031-01-PCT-DGC, 2020 WL 3268694, at *1 (D. Ariz. June 17, 2020) (holding that "[t]he First Step Act amended § 3582(c) to permit motions for compassionate release by prisoners," rather than only the Prison Director). As amended, 18 U.S.C. § 3582(c) provides:

> (A) the court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c). "Under the compassionate-release statute, the district court may reduce a term of imprisonment if it finds, (1) after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, (2) that there are (a) extraordinary

and compelling reasons (b) which warrant such a reduction; and (3) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Davis*, No. 21-10094, 2022 WL 1090945, at *1 (9th Cir. Apr. 12, 2022); 18 U.S.C. § 3582(c)(1)(A); *see also* U.S.S.G. 1B1.13 (policy statement regarding § 35829(c)(1)(A) imprisonment sentence reductions). District courts are not bound by the terms of the Sentencing Commission's policy statement set forth in U.S.S.G. § 1B1.13 but may consider them as guidance. *Davis*, 2022 WL 1090945, at *1; *see also United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

An inmate may file a motion for compassionate release in the district court "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). For this requirement to be fulfilled, the request must be submitted to the warden and contain the "extraordinary or compelling circumstances that the inmate believes warrant consideration" for compassionate release. *United States v. Rice*, 848 F. App'x 320, 321 (9th Cir. 2021), citing 28 C.F.R. § 571.61(a).

### III.   ANALYSIS

#### a.   Defendant has Exhausted her Administrative Remedies

Defendant submitted a request for sentence reduction to the warden of FDC SeaTac "on or around March 31st [2022.]" (Doc. 48 at 1, 11, 13.) As of May 12, 2022, the Warden had not responded, and more than 30 days had passed. *Id.* The government's position on exhaustion is unknown. For purposes of this Order, the Court accepts that Defendant has exhausted her administrative remedies.

#### b.   Defendant has Not Established Extraordinary and Compelling Reasons for a Reduction in Sentence

The Court has reviewed the record and determines that Defendant's health conditions do not constitute 'extraordinary and compelling' reasons for a reduction in sentence. Defendant is twenty-five years old and suffers from anemia, anxiety, depression, psychosis, and manic episodes. (Doc. 41 at 1; Doc. 48 at 2.) She also has a history of

substance abuse, smoking, and alcoholism. (Doc. 48 at 2.) "[T]here is no evidence that anemia puts [a d]efendant at an increased risk of severe illness or death from [COVID]-19." *United States. v. McCain-Bra*y, 2:16-CR-00224-KJD-CWH, 2021 WL 5501103, at *1 (D. Nev. Nov. 23, 2021); *see also United States v. Padilla-Barron*, No. 2:09-CR-1355-PHX-DJH-2, 2021 WL 2075738, at *3 (D. Ariz. May 21, 2021) (holding that "anxiety and anemia are common conditions in the national population and even combined, they do not amount to extraordinary and compelling circumstances warranting release.").

Of the mental health conditions that Defendant claims to suffer from, the CDC has identified only depression, history of smoking, and history of substance abuse (including alcohol, opioid, or cocaine use disorder).[1] Defendant has a history of substance abuse, including alcoholism and Percocet abuse. However, following her arrest, she went into withdrawal from drugs and alcohol. (Doc. 43 at 2.) Defendant also has been diagnosed with mental health disorders including anxiety, depression, PTSD, and psychosis. *Id.* Following her arrest, prison doctors prescribed medications to treat her mental health disorder and Defendant claimed that this gave her "some peace and serenity for the first time since her early-teen years." *Id.* Defendant did not say whether she received COVID-19 vaccinations and/or previously contracted COVID-19 and, if so, the nature of her symptoms and recovery. *Id.* Moreover, Defendant has not presented evidence that she is unable to seek treatment at FCD SeaTac for her medical conditions or for a COVID-19 infection. *Id.*; *see also United States v. Rennie*, 3:19-CR-00402-SI, 2021 WL 5053286, at *2 (D. Or. Nov. 1, 2021) (collecting cases) (recognizing that "[t]he Ninth Circuit, however, has made clear that pre-existing medical conditions that add an increased risk of complications from COVID-19 do not necessarily present 'extraordinary and compelling' circumstances warranting compassionate release, even when a defendant is housed in a facility where inmates have tested positive for COVID-19.").

Defendant contends that inadequate medical services and poor prison conditions, combined with her health conditions, puts her at increased risk of contracting COVID-19

---

[1]*See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 11, 2022).

and "suffering from severe health consequences" as a result. (Doc. 48 at 3-4, 7-10.) Defendant specifies that inaccurate COVID test results, the spread of the omicron variant, and overcrowded prison conditions, all put her at increased of contracting COVID-19. *Id.* The BOP has modified its operations to mitigate the spread of COVID-19 by testing requirements, quarantines, face coverings, temperature checks, and by making vaccines available to inmates.[2] While Defendant's vaccine status is unclear, the COVID-19 vaccine is still available to her, and it is effective. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (holding that "even recognizing the purported seriousness of his condition, the fact remains that . . . the COVID-19 vaccine is available to him in prison. . . . And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced.").

"In light of the efficacy of COVID-19 vaccines, courts consistently refuse to find that COVID-19 presents an extraordinary or compelling reason for relief." *United States v. Tsingine*, CR-09-08132-001-PCT-GMS, 2021 WL 3419056, at *2 (D. Ariz. Aug. 5, 2021); *United States v. Mitchell*, No. CR-05-00886-002-PHX-DGC, 2021 WL 2661486, at *3 (D. Ariz. June 29, 2021) (recognizing that "[m]any courts have found that a vaccinated prisoner's risk of contracting COVID-19 does not rise to the level of an extraordinary and compelling reason, even in the presence of underlying health conditions.") (internal citation omitted); *United States v. Steltenpohl*, No. CR-18-0078-001-PHX-SPL, 2021 WL 2635456, at *1 (D. Ariz. June 25, 2021) (holding that "regardless of his health conditions, COVID-19 reinfections are rare—particularly where the individual has been vaccinated."); *United States v. Ballenger*, No. CR-16-5535 BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) (holding that "because [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.").

---

[2]*See* https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited July 11, 2022).

### c.  The § 3553(a) Factors Weigh Against Release

Even if the Court had determined that extraordinary and compelling reasons existed, the Court would still have to find that release is appropriate after considering the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Acosta*, No. CR-05-01319-001-PHX-RCC, 2021 WL 1790773, at *1-5 (D. Ariz. May 5, 2021) (denying motion for compassionate release despite finding extraordinary and compelling circumstances because § 3553 factors weighed against release). As explained below, the § 3553(a) factors do not weigh in Defendant's favor.

As laid out by the government in its sentencing memorandum, before Defendant's involvement in drug trafficking related to this case, she was arrested in 2016 for possession with intent to distribute marijuana. (Doc. 44 at 3.) Despite her 2016 arrest, Defendant smuggled fentanyl pills across the border, bragging to her brother about the money she would make. *Id.* Defendant committed a very serious offense which resulted in the death of a 19-year-old man and serious injuries to two other young victims. *Id.*

The Court finds that Defendant's conduct in this case, taken together with her criminal history, shows she is likely to recidivate. The Court is also satisfied that the sentence imposed was appropriate, especially given the harm suffered by three victims. Defendant has served less than half of her sentence, and the Court finds that her release would undermine the § 3553(a) sentencing factors.

### IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED DENYING** Defendant's motion for compassionate release. (Doc. 48).

Dated this 13th day of July, 2022.

Honorable John C. Hinderaker
United States District Judge